IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Tona Tedder, | ) | C/A No. 4:20-707-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION & ORDER** |
| Care South Carolina, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court for review of the December 15, 2021 Report and Recommendation of United States Magistrate Judge Kaymani D. West (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). [ECF No. 55.] For the reasons outlined herein, the court adopts the Report in its entirety.

**PROCEDURAL BACKGROUND**

This is an employment dispute brought by Plaintiff Tona Tedder ("Plaintiff") against her former employer, Defendant Care South Carolina, Inc. ("Defendant" or "CareSouth"), alleging violations of the Americans with Disabilities Act ("ADA") and state law claims of defamation, tortious interference with prospective contractual relations, and worker's compensation retaliation. [ECF No. 1-1 at 16–29, Am. Compl.] On March 23, 2021, Defendant filed a motion for summary judgment on all claims. [ECF No. 37.] Plaintiff submitted a memorandum in opposition, and Defendant replied. [ECF Nos. 44, 46.] On December 15, 2021, the Magistrate Judge issued the Report that is the subject of this order. Therein, the Magistrate Judge recommends that the court grant Defendant's motion for summary judgment as to all of Plaintiff's federal claims and remand the remaining state claims to the Darlington Country Court of Common Pleas. [ECF No. 55.]

1

Attached to the Report was the notice of right to file objections. *Id.* Plaintiff and Defendant filed objections on January 12, 2022, and filed corresponding replies on January 26, 2022. [ECF Nos. 59, 60, 63, 64.] Accordingly, the matter is ripe for this court's review.

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). In the absence of objections, the court is not required to provide an explanation for adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas*, LLC, No. 0:15-cv-04009, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the pleading or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-cv-0288, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (emphasis added) (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47).

## DISCUSSION

Plaintiff objects to the Report's recommendations on her ADA claims. *See* [ECF No. 60.] Defendant objects to the Report's recommendation to remand Plaintiff's state claims to state court. [ECF No. 59.] The court considers each party's objections in accordance with the above standard.

### I. Plaintiff's Objections

#### A. Direct Evidence of Discrimination

Plaintiff's first objection asserts that the Report erred in finding that she failed to provide direct evidence of disability discrimination. *See* [ECF No. 60 at 3.] "Direct evidence is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Cole v. Family Dollar Stores of Md.*, 811 F. App'x 168, 175 (4th Cir. 2020) (internal quotations omitted). It is "evidence that the employer announced, or admitted, or otherwise unmistakably indicated that [the forbidden consideration] was a determining factor." *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982) (citing *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1113 (4th Cir. 1981)).

As an example of direct evidence, Plaintiff points to CareSouth Chief Medical Officer Stephen Smith's ("Smith") testimony regarding his offer for Plaintiff to work parttime after she began new treatment. *See* [ECF No. 60 at 3–4.] The Report acknowledged this testimony, noting "Smith

3

indicated that the reason he suggested parttime was because Plaintiff had been missing work and her October numbers were lower than usual." [ECF No. 55 at 10.] Plaintiff argues that the Report erred in failing to consider the testimony "direct evidence" that Smith terminated her based on her disability. *See* [ECF No. 60 at 3–4.] Plaintiff, however, fails to point to any portion of this testimony reflecting that Smith harbored a discriminatory attitude or terminated Plaintiff based on her disability. *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999) ("To survive summary judgment on the basis of direct and indirect evidence, [the plaintiff] must produce evidence that clearly indicates a discriminatory attitude at the workplace and must illustrate a nexus between that negative attitude and the employment action."); *Young v. United Parcel Serv., Inc.*, 784 F.3d 192, 201 (4th Cir. 2015) ("[E]vidence is direct if it establishes discriminatory motive with no need for an inference or a presumption."). Thus, Plaintiff has failed to provide direct evidence of Smith's alleged discriminatory motive, and her objection is overruled.

Plaintiff fares no better citing to portions of testimony reflecting that CareSouth management was aware of her health issues and knew that her new treatment had negatively impacted her productivity. *See* [ECF No. 60 at 5–6.] Again, the evidence does not reflect a discriminatory attitude. Nor does it show "that the employer announced, admitted, or otherwise indicated" that Plaintiff's disability was the determining factor in its decision to terminate Plaintiff. *See Cline*, 689 F.2d at 485. Her objection is thus overruled.

Finally, Plaintiff points to a 2017 email chain where she indicated that CareSouth needed to replace the carpet in its lobby areas before she could return to work, and Defendant's CEO, Ann Lewis ("Lewis"), replied that she would be unable to accommodate the request. [ECF No. 60 at 5.] The Report thoroughly considered Plaintiff's argument and correctly concluded that the email chain fails to provide direct evidence that Defendant terminated her because of her disability. As

4

the Report explained, Plaintiff did return to work a few months later (without the requested recarpeting) and there is no apparent nexus between Lewis's decision not to recarpet and Plaintiff's termination her two years later. *See* [ECF No. 60 at 20]; *Cole*, 811 F. App'x at175; *Brinkley*, 180 F.3d at 608 ("Unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of [discrimination]." (quoting *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686 (7th Cir. 1991))). Plaintiff's objection is thus overruled.

### B. Evidence of Pretext

Because the Plaintiff failed to provide direct evidence of discrimination, the Report went on to analyze her claim under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973), burden-shifting framework. The Report ultimately recommended summary judgment in favor of Defendant because it proffered a legitimate non-retaliatory reason for terminating Plaintiff—that she engaged in conduct violative of its anti-bullying policy—and Plaintiff failed to establish that the reason was pretextual. *See* [ECF No. 55 at 24–25.] In her objections, Plaintiff argues that she offered several pieces of evidence which substantiated her pretext claim.

#### 1. Direct Pretextual Evidence

First, Plaintiff asserts in conclusory fashion that the above-mentioned evidence, if not direct evidence of discrimination, is sufficient to demonstrate a triable issue of pretext. *See* [ECF No. 60 at 6–7.] Plaintiff refers to her previous argument concerning direct evidence of discrimination but fails to focus this court's attention on the issue at hand—whether the evidence demonstrates that Defendant's stated reason for terminating her (that she violated its antibullying policy) was pretext for discrimination. *See id.*; *Diamond*, 416 F.3d at 315 ("The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." (citing *Thomas v. Arn*, 474 U.S. 140 (1985)). The court finds

Plaintiff's prior argument concerning direct evidence fails to demonstrate a genuine dispute of material fact on the question of pretext. Accordingly, the court overrules her objection.

### 2. Perception of Other Employees as Evidence of Pretext

Next, Plaintiff argues that she provided evidence that other CareSouth employees did not view her as a bully, creating an issue of material fact as to whether she was a bully and whether the proffered reason for termination was pretextual. *See* [ECF No. 60 at 7–8.] The Report addressed and rejected this argument, *see* ECF No. 55 at 27, and it was correct in doing so. At the pretext stage of the analysis, the focus is on the *employer*'s perception of the employee's behavior. *Id.* And as the Report explained, Plaintiff's evidence reflects that some employees did not perceive to her be a bully, but it fails to establish that her employer's proffered reason was pretextual. *See* [ECF No. 55 at 27–28]; *see also DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (noting whether the plaintiff's coworkers thought she did a good job or did not deserve to be discharged "is close to irrelevant" as to whether her employer's proffered reason was pretextual) (citation omitted)). Plaintiff's objection is thus overruled.

### 3. Other Evidence of Pretext

Plaintiff argues that Defendant's earlier performance evaluation of her work supports her pretext claim. *See* [ECF No. 60 at 14–16.] Plaintiff herself testified, however, that "CareSouth believed what they put on the piece of paper [that Plaintiff's behavior was bullying]" when CareSouth terminated her. Pl. Dep. 120. Plaintiff does not address this admission, which Defendant argues "precludes a finding of pretext." *See* [ECF No. 63 at 1–2.] Instead, Plaintiff attempts to establish pretext by pointing to a November 2018 performance evaluation where she met or exceeded expectations in every category, including those concerning her respect toward patients and staff. [ECF No. 60 at 15–16.] Plaintiff offers this evaluation as proof that "she was

6

not a bully." *Id.* at 16. However, as Defendant explains in its Reply, Plaintiff's reliance on this performance evaluation is misplaced because the complaints about her bullying that formed the basis for the termination decision were raised *after* the November 2018 evaluation. *See* [ECF No. 63 at 10.] The court finds her positive November 2018 evaluation fails to demonstrate a triable issue as to pretext, and her objection is overruled.

Next, Plaintiff points to alleged investigatory failures by Defendant. She references the email Denise Ellis ("Ellis"), CareSouth's Human Resource Representative, sent to Smith and Lewis on December 7, 2018. *See* [ECF No. 60 at 16.] The email contains Ellis's notes from her conversations with six employees about Plaintiff's behavior. Ellis conducted these interviews in response to complaints about Plaintiff and reports that other employees were considering quitting. *See* [ECF No. 55 at 11.] Notwithstanding Ellis's investigation, Plaintiff suggests that Smith and Lewis should have *personally* investigated the employees' bullying accusations prior to terminating her, and their failure to do so is evidence of pretext. *See* [ECF No. 60 at 16.]

Plaintiff, however, "is not entitled to an even, fair, or just investigation. Pretext analysis does not convert Title VII into a vehicle for challenging unfair—but nondiscriminatory—employment decisions." *Bennett v. New Foundations Child. & Fam. Servs., Inc.*, 2010 WL 517900, at *8 (D.S.C. Feb. 10, 2010); *see also Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) ("Even if these investigations were improper or substandard, that does little to help her establish that the reasons given for her termination were not the actual reasons, and it certainly does not give rise to a reasonable inference that her race or gender was the real reason for her termination."); *Oglesby v. Itron Elec. Metering, Inc.*, No. 8:17-cv-00216, 2018 WL 3853558, at *4 (D.S.C. Aug. 14, 2018) (assuming that the plaintiff was terminated "based on the false statements of co-workers, at most, this establishes that [the defendant] conducted a poor investigation and made a poor decision" but

it does not establish pretext for discrimination). Thus, assuming that Defendant conducted a poor investigation into the allegations, it fails to establish pretext for discrimination.

Additionally, Plaintiff cites Defendant's failure to accommodate her 2017 recarpeting request as evidence of pretext,[1] but this argument also fails. Lewis's statement denying her request does not permit a reasonable inference that Defendant's decision to terminate her two years later for violating its antibullying policy was false and instead based on a discriminatory intent to end her employment. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason.").

In sum, for the above-stated reasons and those in the Report, Plaintiff has failed to raise a triable issue of fact as to whether Defendant's proffered reason for terminating her was pretext for discrimination. As a result, the court adopts the Report's recommendation to grant summary judgment in favor of Defendant on Plaintiff's ADA discrimination claim.

**C. Retaliation**

Turning to Plaintiff's claim of retaliation, Plaintiff challenges the Report's determination that, even if she could establish a *prima facie* case of retaliation, she failed to show at the pretext stage that her termination would not have taken place "but for" her claimed protected activities. [ECF No. 60 at 17 (citing ECF No. 55 at 32)]; *see Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (holding that the *McDonnell-Douglas* framework requires "proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action"). The

---

[1] The Report explains that Plaintiff failed to raise a "failure to accommodate claim" in her complaint, and thus, recommended granting summary judgment as to any such claim. *See* [ECF No. 55 at 28.] Plaintiff does not object to this finding in her objections and instead appears to assert the failure to recarpet as evidence of pretext. *See* [ECF No. 60 at 17, 22.]

"protected activity" analyzed in the Report is the December 2018 discussion of Plaintiff moving to parttime or remote work. *See* [ECF No. 55 at 30.] The Report assumed for purposes of the analysis that the discussion was a "request for accommodation" or some other qualifying activity. *See id.* Plaintiff argues in her objections that the proposal that she "transition to part time work was discriminatory in nature, *not an accommodation*," but she does not offer any other protected activity to support her retaliation claim. [ECF No. 60 at 18 (emphasis added).] Defendant argues that this admission effectively eliminates her retaliation claim, as the part-time proposal was the only potential protected activity found by the Magistrate Judge. *See* [ECF No. 63 at 2.]

Even assuming, as the Report did, that Plaintiff's failure to accept the part time or remote work offer constituted a protected activity, Plaintiff nevertheless fails to demonstrate at the pretext stage that retaliation was a "but for" cause of her termination. The December 3, 2018 email where Smith relayed the offer states "[t]o be clear, you are not being pushed, this is up to you," *see* ECF No. 37-2 at 100, and Plaintiff testified that the two agreed to wait until January or February to see how she was doing with her treatments and revisit the option, Pl. Dep. 99. Plaintiff further fails to establish pretext through the opinion testimony of her coworker, Kendra Robinson, as to why Defendant terminated her, because "[a]t the pretext stage, it is CareSouth's reasons that are to be considered." [ECF No. 55 at 32.] Nor does Plaintiff establish pretext through the temporal proximity of the part-time offer and the decision to terminate her employment. [ECF No. 60 at 19–21.] While temporal proximity may suffice to demonstrate the causation element of her *prima facie* case, it does not sufficiently demonstrate the "but for" causation required at the pretext stage. *See Nathan v. Takeda Pharms. Am., Inc.*, 890 F. Supp. 2d 629, 648 (E.D. Va. 2012), *aff'd*, 544 F. App'x 192 (4th Cir. 2013) ("As the Fourth Circuit has stated, temporal proximity alone, while perhaps sufficient to establish causation for the purposes of a prima facie case [of retaliation],

9

cannot create a sufficient inference of pretext." (citing *Williams v. Cerberonics*, Inc., 871 F.2d 452, 457 (4th Cir. 1989)); *Foster*, 787 F.3d at 251 (noting the causation standards for establishing a prima facie case of retaliation and proving pretext are not identical, and the *prima facie* causation burden is "less onerous"). Accordingly, Plaintiff's objection is overruled.

After a careful review of Plaintiff's objections regarding her retaliation claim, the court finds no basis for disturbing the Magistrate Judge's recommendation. Accordingly, the court grants Defendant's motion for summary judgment on Plaintiff's retaliation claim.

## II. Defendant's Objections

Defendant objects to the portion of the Report recommending that the court decline to exercise jurisdiction over Plaintiff's remaining state law claims. [ECF No. 59-1 at 4–8.] Plaintiff filed a reply in opposition. *See* [ECF No. 64.]

The Fourth Circuit has explained that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995); *see Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 616 (4th Cir. 2001) (explaining that "federal courts to have an inherent power to remand removed State claims when the federal claims drop out of the case"). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanghan*, 58 F.3d at 110; *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered. . . will point toward declining to exercise jurisdiction over the remaining state-law claim.").

Upon consideration of the record, the Report, and the parties' arguments, the court concludes that the balance of factors weighs in favor of remanding Plaintiff's state law claims against Defendant. It is both convenient and fair to remand this case to state court because all parties are citizens/residents of South Carolina, and the case was originally filed in state court. All federal claims have been extinguished and there are no issues of federal policy underlying the remaining state claims. Furthermore, comity favors allowing the state court to resolve the state law claims. And although the state law claims are fully briefed, this fact is not as strong as Defendant contends because the Report did not examine those claims and thus either the state court or this court will be examining them in the first instance. *See also Watts v. S.C. Dep't of Corr.*, No. 3:17-cv-02376, 2019 WL 1122934, at *6 (D.S.C. Mar. 11, 2019) ("[J]udicial economy does not disfavor remand to state court merely because the parties have already briefed the state law claim.") As a result, the Court declines to exercise supplemental jurisdiction and remands Plaintiff's state claims to the Darlington County Court of Common Pleas.

## CONCLUSION

In accordance with the foregoing analysis, the court overrules the objections, **ADOPTS** the Report, ECF No. 55, in its entirety, and incorporates the Report herein by reference. As a result, the court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 37, as to Plaintiff's ADA claims, and **REMANDS** Plaintiff's remaining state claims to the Darlington County Court of Common Pleas.

**IT IS SO ORDERED.**

March 29, 2022
Florence, South Carolina

/s/Sherri A. Lydon
Sherri A. Lydon
United States District Judge